Anthony Dominguez is here for the appellate and Tracy Jones is appearing remotely for the government. Good morning. Mr. Dominguez, you may begin. Thank you, Your Honor. Anthony Richard Dominguez on behalf of the petitioner and may it please the court. Your Honors, the court should reverse the decision of the IJ and the Board of Immigration Appeals and remand the matter to the immigration judge for two primary reasons. Number one, both the immigration judge and BIA failed to give reasoned consideration to his claim of asylum on account of his race, such that he has a well-founded fear of future persecution on account of being an indigenous Mayan. Number two, and more importantly, Your Honors, the immigration judge and the BIA failed to apply the plain and unambiguous language of 8 USC 1158 B1 B2 which the plain language commands that the petitioner be released. The petitioner had an opportunity to provide corroborating evidence after the immigration judge has decided his testimony was credible, after the immigration judge decided that that credible testimony was insufficient in its own right, that he needed more corroboration, and after the immigration judge decided that it was not unreasonable for him to acquire that additional information. He was represented by a lawyer, he received notice that he had to provide corroborating evidence in his application instructions, and his lawyer could have moved for a continuance in order to obtain that corroborating evidence, right? He was represented by counsel, Your Honor, that's correct. I believe that the statute, it does create a duty for the immigration judge, because the statute, if we look at the plain language of 1158, it says where the trier of fact determines, so the trier of fact, which is the immigration judge has to make these three decisions prior to this creation of that the evidence must be provided. The immigration judge can only make the determination of credibility, whether that credibility is insufficient on its own right, and three, whether it is unreasonable or reasonable for him to acquire more evidence, which they had a discussion in this case about his mother speaking, whether she was in Guatemala, whether his mom, it's only after the immigration judge or the trier of facts determines those three predicates that the duty arises on the petitioner that the evidence must be provided. The plain language, it squarely creates a duty on the immigration judge. Now, I know it seems unusual, Your Honor, that, okay, he was represented by counsel, he should have, you know, they should have asked for a continuance, but I would reiterate the fact that this is a right only being enforced on immigration judge in asylum proceedings, which essentially there's a heightened duty under our standards of the government standards of refugee act to get to the bottom of what's really going to happen. Conceptually, what should the immigration judge have done if the, here he says, I find you to be credible, but there's no corroboration of your testimony, what should the immigration judge have done at that point? Here, the immigration judge did go as far to discuss the reasonability of getting a few more corroborating evidence from the mother in Guatemala, from the brother in Guatemala, and there at that point, the immigration judge should have granted a brief continuance for him to provide this credible testimony because he otherwise found him credible. If really, I believe you, I believe your testimony, I need to see a little bit more evidence to do that. A brief continuance is not a very big duty on the immigration court or creates a great burden on the immigration court. And I would reiterate, this is not a duty that would be on all immigration judges when we're talking about discretionary relief in deportation for someone who's committed crimes and they're applying for discretionary relief that really, as a country, we don't have to provide them at all. We're talking about finding the truth of the matter in a non-adversarial proceeding where the immigration judge in our justice system is trying to fulfill our obligations under our international treaties as a refugees. This additional opportunity to corroborate would only arise in this small context. So you would agree that for us to agree with you, I guess, we would have to conclude that the statute is unambiguous in its requirement for the IJ to allow the petitioner to provide additional corroborating evidence after the petitioner is found to be credible and the IJ has determined that additional evidence is necessary. Yes, and that it would not be unreasonable for you to get that additional evidence. Yes, we do believe that the plain language of the statute and the two clauses of that sentence, the end of the statute, does answer the matter here. Even if the court were to find it to be ambiguous, deference is not warranted to matter of LAC, Your Honor. Matter of LAC just doesn't make sense. How can the decision of the immigration judge, which the trier fact determines, he must make these three determinations. How can you know what you have to provide or if you're going to be found credible unless you can hear the order of the immigration judge on those three issues, which only comes at the final order? It's a published decision. Don't we owe Chevron deference to a published decision of the BIA? No, Your Honor. We're coming with a Chevron step one problem. We think that the plain language of the statute solves the issue and that no deference is owed because we're at a Chevron step one issue. We don't get to the deference question because you're saying the plain language is unambiguous. That's correct. The plain language unambiguously creates three predicates, three conditioned predicates. I think Judge Wilson's question, and of course Judge Wilson can correct me if I'm wrong, is based on the assumption that we do get to the Chevron question. Let's say that we find that it isn't unambiguous, then why are you saying that we shouldn't . . . I mean, you said it doesn't make sense. Why are you saying it doesn't make sense? That's your argument for why we shouldn't give deference. Well, I do believe that putting the burden on the petitioner in that case when the burden should be on the immigration judge, again, I would refer back to the statute. But another reason why the court wouldn't apply deference to a matter of LAC is simply because we're at the importance of the matter of deterring, basically something that . . . I mean, it would have to be unreasonable and irrational for us to not defer if we got to that step. Or else there would have to be some other reason, like maybe it didn't go through the proper procedure or something. But I guess I'm asking you, what does your argument come down to? What are sort of the magic . . . what's the magic label that you're sort of posting on it as to why we shouldn't defer to this decision? Well, respectfully, Your Honor, I think why we shouldn't . . . I would contest that Chevron step one takes care of the matter because it . . . Right, I got that. Okay. So this question is a hypo where we don't agree. Okay, I believe the importance of asylum proceedings, Your Honor, when compared with other just deportation proceedings of discretionary relief. The regulations clearly state that the immigration judge is supposed to be a non-adversarial party. Essentially help the parties in just an inquisitorial tribunal. They are not an adversarial party according to 8 CFR 1208.9B. They're essentially helping trying to get to the bottom or the truth of the matter as to whether you will be persecuted if we return you to the country. And we're talking about a case where the immigration judge already believes the person does fear for their life. We are finding that person credible. We believe your fear. They want a little bit more corroborating evidence to make that decision. So for that reason, I would believe that the court should not afford deference to a matter of LAC should the court get to a Chevron step two analysis. Are we sure that this claim was raised in the notice of appeal and the brief before the BIA? Your Honor, I don't . . . It's a Chevron step one problem. So even if that were the case, the BIA can't not afford deference to its own case law. So because it's a Chevron problem, they're . . . You don't have to exhaust the argument? I think it would be futile, Your Honor. And I do have cases . . . If that's the case, we don't have jurisdiction to consider it, right? Well, no, Your Honor. There is a futility exception well established by the Supreme Court in Montana National Bank v. Yellowstone County. That's 276 United States 499 in 1928. Also, this court in Amaya, Artuango v. Attorney General, that's 463 Federal 3rd, 1247, 11th Circuit, 2006, clearly states that nonetheless, absent a cognizable excuse or exception, this court would lack the ability to review an unexhaust issue. So the 11th Circuit, in the PFR context, has recognized that exceptions to this doctrine to exhaustion exist. One of those well-founded exceptions is futility. Here, we would be asking the BIA or the counsel below would have been asking the BIA to essentially overturn its own precedent. It can't do that. It has to follow its own precedent. So it would have been futile to argue that before the BIA. As far as issue number two that we're bringing up, as far as the opportunity to provide corroborating evidence. So your argument then is that it wasn't necessary to raise that in front of the Board of Immigration Appeals because it would have been futile. So therefore, there's no need to have exhausted that argument? Is that basically what you're saying? In a perfect world, we would have raised it, Your Honor. We weren't the counsels below. But I do believe that the exemption, the futility exemption, does apply when we're speaking about overturning precedent. An agency overturning its own precedent. It was clearly referenced in the Amaya Artuanga decision. And I would also refer that this futility exemption is well-founded in this circuit. Also in MTV versus Delcad School County, 446 F3rd 1153, Your Honor. 11th Circuit 2006 and Carino versus Southern Belle Telephone Company. 11th Circuit from 2000, Your Honor. So this, although it wasn't raised below, the BIA has to follow its own precedent. They can't overturn on Chevron Step 1 its own precedent. They have to follow it. So it would have been futile even if it was raised. So briefly, Your Honors, we've discussed the second issue. I see I'm almost out. As far as the first issue, failure to reasonably consider. I would refer to this court's recent precedent in Jeff Thurasand versus Attorney General. 11th Circuit 2001, 17 F4, 1365. There, the immigration judge considered the race, the claim for asylum based on the Tamil race. Considered the PSG of failed asylum seekers. But did not consider the PSG of failed Tamil asylum seekers. This court reversed the decision of the BIA. Said you have to go back and analyze that third category of failed Tamil seekers. Just because race may have been a part of the PSG here. That Jeff Thurasand stands for the, stands for the idea that that race would not, like the court should still remand the matter to consider race separately and apart. Although it was a part of PSG. With that, I see my time is over. Thank you. All right. You've reserved some time, Mr. Dominguez. And Ms. Jones, you may argue on behalf of the government. May it please the court. Good morning. My name is Tracy Jones. And I'm appearing on behalf of the respondent, the United States Attorney General. This court should deny the position for review because petitioner failed to meet his burden of proof. And establishing eligibility for asylum with and withholding of removal. And the record does not compel a contrary conclusion. Here, the only issue, the main issue in this case, Is whether the petitioner demonstrated that the Guatemalan government is unable and unwilling to protect him from any future harm. The petitioner has the burden of proof to submit evidence to support his claims. And the petitioner failed to submit adequate evidence showing that the government was unable or unwilling to protect him from a private actor. I have a question for you. It's the plain language of United States Code Section 1158B1B2. Ambiguous about whether the immigration judge is required to give an applicant time to obtain corroborating evidence. After the immigration judge determines the applicant's testimony is credible, but requires additional corroboration. If you can tell me why. Yes, Your Honor. According to a matter of LAC, the board outlined that the Chevron test and it determined that the statute is ambiguous. And that step two shows that. That the Congress actually intended for the burden to lay on the on the non-citizen in order to submit corroborating evidence. Here in his in his opening brief and in his reply brief, petitioner argues that matter of LAC should not apply. However, that's not the case. You cannot just simply say that the case should not apply because it's not favorable to your argument. Counsel related to that question. You know, I think that's a separate question. That's Chevron step two. Right. I mean, if first we have to consider, especially under the courts, the Supreme Court's most recent precedent, we have to consider whether the plain language what the plain language of the statute requires and whether that is clear. We only get to the agency's decision if we determine that the statutory language is not clear. So so I guess I'm curious as to why you think the statutory language is ambiguous. What is it in the language itself that you rely upon to argue that the statute is not clear as to what or that it's clear that you can't. That the that the I.J. is not required to allow the petitioner an opportunity to present additional evidence after the I.J. determines that the petitioner is credible and there's not otherwise enough evidence to corroborate. Well, your honor, if I'm understanding your question correctly, if the statute is not clear as to the immigration judge requiring advance notice of corroborating evidence and therefore requiring for our therefore telling the petitioner what evidence is needed. And please stop me if I'm not answering your question. I just want to make sure I understand you clearly and answering it. That's right. That's exactly what I'm asking for. And what I'm asking for is why it is that you think that the statute leaves some ambiguity. What what could you point to in the statute as being not entirely clear? Well, your honor, it does. The statute does have uses the words may, which indicates that. That indicates that the case that the immigration judge may may ask for corroborating evidence. Matter of L.A.C. really actually lays it out pretty well that the statute is not is not clear and therefore this must go to the Chevron step to analysis. Well, you know, the problem, as I see it, Miss Jones, is that you've got two other circuits, the ninth and the ninth and the third circuit, who disagree, who say that the plain language of this statute requires that an alien. And this is what they say, quote, must be given notice of the corroboration required and an opportunity to either provide that corroboration or explain why he cannot do so. So we'll create a circuit split if we disagree, if we accept your argument and disagree with the ninth and the third. Right. Yes, your honor. But there are other circuits that have applied matter of L.A.C. and has have adopted the holding. And in fact, there's in the case a 2020 case in which this court discussed and generally discuss an applied matter of L.A.C. and a case where the petitioner was deemed credible, although his testimony was, quote, unquote, weaker. And the court still upheld the decision that corroborating evidence was needed without advance notice being given. What case is that? It's Nguyen, the U.S. Attorney General. It's an unpublished decision. The site is 825 Federal Appendix 622. Yeah, well, that's an unpublished decision, but we also have another unpublished decision, Mayo versus the Attorney General. It's 2014. Yes, that can be read. Yes, that can be read to agree with the ninth and the third circuits that you got to give them an opportunity if you deem them to be credible. So, yes, our unpublished decisions are if are really in conflict with one another, aren't they? Well, your honor, a good point to point a good thing to point out is that now was a 2014 case, and that case was actually decided before the board's presidential decision, a matter of L.A.C. So that decision. Here's the thing that concerns me. I think there was a point in time when courts were reviewing the plain language of statutes under Chevron and deferring to agency interpretations much, much more readily. That is, they were not quite skipping step one of Chevron, but they weren't giving it as much review, maybe is the best way to put it, as the Supreme Court has recently indicated and emphasized that we are to do. I mean, in Kaiser, which was obviously not a Chevron case, it was an Auer case, but even so, it is the same kinds of principles. It's cited to Chevron. It's the same issue. The court was very clear that we are to exhaust every tool in our interpretive toolbox before we determine that a statute is ambiguous. And so the decisions from the other courts, I know some of them come after Kaiser, but most of them are before Kaiser, and I'm not sure any of them discussed Kaiser. Maybe they did, and you could point me to those. I'm just wondering if the decisions from the other circuits that deferred or that got to the second step of Chevron really had occasion to consider the first step of Chevron, that is, the ambiguity or non-ambiguity of the language of the statute, in the way that the Supreme Court has in recent years emphasized that we must do. And if so, if you want to sort of direct me to one of those, that would be great. Thank you. Yes, Your Honor. To answer your question, the courts did. I believe the Sixth Circuit was one of the cases that actually did complete the first step of Chevron deference and determined that the statute itself is not clear. I do not have that case site in front of me, but I can provide it to the court, but I do not have that case in front of me. The Sixth Circuit and the Fifth Circuit are both circuits that have adopted matter of LAC and have upheld the finding that there is no requirement for the immigration judge to place advance or to provide advance notice for corroborating evidence where the petitioner is deemed credible. Did either one of them cite Kaiser or any of the more recent cases from the Supreme Court emphasizing the rigor with which we have to examine the statutory language? I'm not sure if they explicitly cite Kaiser. I did read over the cases, but I'm not prepared right now to discuss the cases in detail since they are stemming from other circuits. I can provide a supplemental briefing or a supplemental letter, a 28-J letter that does discuss those two cases in detail if the panel would like.  You're welcome. Now, moving on, the petitioner here did not submit any individualized evidence specific to the facts of his case. The main thing here is that he was well aware that corroborating evidence was needed to support his claims. He was told at the first master calendar hearing that corroborating evidence was going to be needed, and he had 30 days before the merits hearing to submit it. The problem, Ms. Jones, is at that point, he didn't know that the IJ was going to determine that his testimony was credible. That's true, Your Honor, but regardless, the burden has always been on the non-citizen to present evidence to support his claims. Here, the evidence that the petitioner submitted was very boilerplate and was not specific to any of the claims that he was making in regards to the alleged persecution that he suffered and feared at the hands of Andreas. I'm sorry, just let me ask you, I understand what you're saying. You're saying he should have known what he was going to need because he knew what his claims were. The only thing that troubles me about that is that it's not necessarily always clear, or maybe it is, maybe you can speak to this, as to what the IJ is going to find needs more corroboration. Sometimes it could be a situation where it would be something that wouldn't fairly or reasonably be anticipated, or maybe you think that's not the case, and I guess I want to hear from you on that. Well, in this specific case, Your Honor, that's not the case. This court has held that the immigration judge cannot just rule, cannot just determine that the petitioner did not meet his burden of proof because of the lack of corroborating evidence. It has to look at the totality of everything, the evidence that was included in the record, and the evidence that was lacking. Here, there's absolutely no evidence in the record that is specific to the petitioner outside of his declaration that he submitted in conjunction with his asylum application. Even though the petitioner might not have known exactly what pieces of evidence was needed, surely more than just a declaration that was very detailed, that actually left out or omitted certain aspects of his claim, should have been known to have been needed outside of that. The declaration itself was not sufficient to carry his burden of proof, and the immigration judge and that board was proper in denying his application on that basis. Can I turn your attention for a moment to the other claim, the lack of reconsideration on the race-based claim? I just wanted to give you an opportunity to address that. Yes. Now, with respect to that argument, the government is in the position that the petitioner did not exhaust that argument to the board. In his reply brief and also in his opening brief, he indicated that because in the brief to the board, the petitioner's counsel had indicated that the petitioner was seeking asylum based on race and his membership in a particular social group. However, throughout the appeal brief to the board, the petitioner only really discussed the particular social group aspect of his claim and never really addressed the race. In Sanchez Rodriguez, this court has held that the exhaustion requirement is not stringent, but it requires that the petitioner provide sufficient information to the board to allow them the opportunity to address the issue. And the petitioner did not do so here. The conclusory mention of race in the appeal brief to the board was not sufficient to put the board on notice that this issue needed to be addressed and or corrected if needed be. Even if this panel determines that the race was not adequately considered, the finding of the immigration judge that the Guatemalan government was unable or unwilling that the petitioner did not submit sufficient evidence that the government was unable or unwilling to protect him disposes of the nexus. And the court doesn't even need to reach that because that single finding is dispositive of the petitioner's asylum claims. I see my time has run out. If the court doesn't have any other questions, I would just go ahead and conclude and say that the court should deny the petition for review because the petitioner did not provide sufficient evidence corroborating evidence to support his claims for asylum and the record does not compel a contrary conclusion. All right. Thank you, Ms. Jones. Thank you. Reserve some time for a vote. Thank you, Your Honors. Counsel, before you begin, I have a question for you. Yes, Your Honor. Your colleague has referred to the Ninth and Third Circuit cases and you've referred to them as well. And I guess my question for you is, in light of the Ninth and Third Circuit cases, which have determined that the statutory language is clear and unambiguous, why would it necessarily have been futile for the petitioner to raise this issue before the BIA? In other words, why wouldn't the BIA have – why would – why do you argue that the BIA necessarily would have been unwilling to consider or reevaluate its position on this in light of the Third and Ninth Circuit cases? Correct, Your Honor. Well, the BIA would only follow those circuits, obviously, as you know, in those circuits, and the BIA just has to follow its own case law. Until it's overruled in the specific jurisdiction, they're going to – the BIA has to follow their own case law. They can't change their own case law or not afford Chevron deference to their own cases where it hasn't been otherwise determined in that jurisdiction. So for that reason, until it gets decided, it would be futile in the circuit. It would be futile to raise that issue before the BIA. I would also like to respond to your question, Your Honor, about – to my colleague as far as the years of the other circuits. The Second Circuit – they did come prior to our federal court's turn against agency deference here and looking more towards a more stringent Chevron step one. The Second Circuit case was 2009. The Seventh Circuit was 2008, and the most recent one was the Sixth Circuit in 2015. I would reiterate that Wren was going back to the plain language since 2011, and the Third Circuit was the most recent one, 2018, also finding the plain language convincing. I would like to briefly touch on my colleague's mention that the race claim was unexhausted. I do believe it was in the record within page 36. That's the notice of appeal. He clearly brought up the idea of race being independently separate and apart from the PSG. I thought before the agency that those arguments were rolled into one, and he didn't separately assert arguments just about racial persecution. They were separate arguments, Your Honor. I do believe the board kind of conflated it, and granted race was a part of the PSG, but it was more of a race-based labor claim as far as a labor group of the PSG, and again, I would refer to this court's decision in Jetherson v. Attorney General, 2001 decision, where it said even though if you have race in a PSG, a race-based PSG, those are all three separate things, and failure to consider one of them, you have to remand on the case. That case, Jetherson, stands for that principle. The same would apply here. I do believe it is exhausted. I would note page 14, 15, 18, and 20, which is the brief on appeal, which all brought up race. Briefly, before I conclude, I would like to say, Your Honor, in regards to the talk about LAC, I think one of the reasons why, of course, the plain language controls here. We believe Chevron step one takes care of the issue. There's a clear duty to provide an opportunity to provide this evidence after the judge has made the three predicate decisions, but even in the absence of if the court decides no, matter of LAC says that the judge need not even make the third decision as far as discuss the reasonableness of this evidence. So at a very minimum, the court should not afford deference to this idea in matter of LAC that the immigration judge need not even discuss the reasonableness of whether you should bring the evidence to you. With that, Your Honor, we respectfully request that you grant the PFR. Thank you. Thank you, Mr. Dominguez and Ms. Jones. We're going to hear one more case, and then we're going to take a 15-minute break.